# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME L. SANDOVAL,<br><br>       Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>       Defendant. | Case No. 1:17-cv-00701-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 11, 12) |

## I.

## INTRODUCTION

Plaintiff Jaime L. Sandoval ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lumbar degenerative disc disease, obesity, and lumbar strain/sprain. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on January 29, 2013. (AR 194-200, 201-210.) Plaintiff's applications were initially denied on July 3, 2013, and denied upon reconsideration on February 11, 2014. (AR 105-109, 115-120.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on September 3, 2015. (AR 30-54.) On October 13, 2015, the ALJ found that Plaintiff was not disabled. (AR 9-30.) The Appeals Council denied Plaintiff's request for review on March 29, 2017. (AR 1-3.)

### A.  Relevant Hearing Testimony

Plaintiff appeared for a hearing on September 3, 2015, with counsel, and testified with the assistance of an interpreter. (AR 36-47, 50.) At the start of the hearing, Plaintiff's attorney moved to amend the alleged onset date from August 11, 2010, to November 20, 2011. (AR 35.) Plaintiff had moved because he was evicted from his prior residence. (AR 36.) Plaintiff weighed about 110 pounds and was 5 feet 5 inches tall. (AR 36.)

Plaintiff lived with someone but was never married. (AR 37.) He attended school through about the second grade in Mexico. (AR 37.) Plaintiff does not understand any English. (AR 37.)

Plaintiff was living with his son and receives food stamps. (AR 37.) He has a driver's license but does not drive a whole lot. (AR 37.) His son drives him because he cannot be seated for a long time. (AR 37.)

Plaintiff is able to take care of his daily activities. (AR 38.) He does not do any household chores. (AR 38.) They have a woman who comes in to make meals and she also does the dishes. (AR. 38) Plaintiff will sometimes go shopping with the woman. (AR 38.) The lady who helps them out around the house was his lady friend but they have been separated for two years. (AR 38.) Plaintiff goes to mass and sometimes visits with his uncles. (AR 38.)

During the day, Plaintiff will sometimes take a walk, but his back hurts a lot so he cannot sit for long periods of time. (AR 39.) Plaintiff cannot stand for a long time either. (AR 39.)

Plaintiff sometimes watches television or listens to the radio.  (AR 39.)  Sometimes he will take a nap.  (AR 39.)

Plaintiff worked for Quality Mobile Home services installing flooring and fixing windows in new mobile homes for about six months.  (AR 39, 40, 50.)  He also worked for Dole frozen food harvesting peaches and Foster Farms hanging chickens.  (AR 39-40.)  Plaintiff would bend over, pick the chickens up out of the cage, and hang them.  (AR 45.)

Plaintiff has constant lumbar pain in his low back.  (AR 40.)  The pain goes away for a while when he takes his pain medication but the medication makes him sleepy.  (AR 40.)  Plaintiff cannot be seated for a long time so he will get up and take a walk.  (AR 41.)  Sometimes he will lie down on the floor in the shade because he cannot sit.  (AR 41.)  He feels better laying on the cool floor in the shade than he does lying in his bed.  (AR 41.)  Plaintiff takes his pain medication daily but does not use any type of heat, ice, or creams for his back pain.  (AR 41.)  Plaintiff had one injection for his back a long time ago.  (AR 45.)  It helped a little bit.  (AR 45.)  He has not received any additional treatment for his back.  (AR 45.)

Plaintiff also has pain in his right knee all the time.  (AR 41.)  Sometimes it is swollen.  (AR 41.)  He feels the pain all the time and does not know if it is the nerve.  (AR 41.)  The pain goes up the knee to his hip and sometime it gets numb.  (AR 41-42.)  His right arm hurts all the time from the shoulder to the wrist.  (AR 42.)  He is able to grab with his arm, but not a lot.  (AR 42.)  He has no problems with his left arm.  (AR 42.)  Plaintiff has problems holding his arms out in front of him.  (AR 46.)  He will have pain and it feels like it's getting numb.  (AR 46.)  Sometimes it affects his back also.  (AR 46.)  His arm feels numb all the time and his arm hurts all the time.  (AR 46.)

Plaintiff was returned to light work but could not be seated or standing for long periods of time.  (AR 43.)  He was unable to bend over and could not move his arms a whole lot.  (AR 43.)  He was sent back to do the same work where he was injured.  (AR 43.)  He did not understand how they could send him to do the same kind of job and when he told them that and what the doctor said he was fired.  (AR 43.)

Plaintiff takes medication for his blood pressure.  (AR 43.)  It is the same medication he

takes for his back.  (AR 43.)  Plaintiff is still taking Neurontin for his back.  (AR 43-44.)  He sees Dr. Fong who prescribes his medication.  (AR 44.)

Plaintiff saw Dr. Hawley in 2011 for a check-up and he prescribed some medication.  (AR 46.)  Dr. Hawley was Plaintiff's worker's compensation physician.  (AR 46.)  Plaintiff saw him every fifteen days for about a year.  (AR 47.)  After he was told that he could no longer see Dr. Hawley, he went to the Gettysburg Clinic.  (AR 47.)  He sees Dr. Fong at the clinic.  (AR 47.)  Plaintiff started seeing Dr. Fong around December of 2014.  (AR 47.)

A vocational expert, Cheryl Chandler, also testified at the hearing.  (AR 48-52.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31 2015.

- Plaintiff has the following severe impairments: lumbar degenerative disc disease, obesity, and lumbar strain/sprain.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) including lifting up to 50 pounds occasionally and 25 pounds frequently; standing or walking for six to eight hours and sitting for six to eight hours in an 8-hour workday with the following restrictions, he can frequently climb, stoop, kneel, crouch, and crawl.

- Plaintiff is capable of performing past relevant work.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability as defined in the Social Security Act from August 11 2010, through the date of this decision.

(AR 17-24.)

/ / /

# III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal

quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

### DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred in analyzing the opinions of Dr. Hawley, Dr. Hellner, Dr. Nijjar, and Dr. Fong and failed to provide clear and convincing reasons to reject the treating and examining source opinions. Plaintiff also argues that the ALJ erred by failing to consider his consistent work history in making her credibility finding.

Defendant responds that the ALJ provided good reasons that are supported by substantial evidence to reject the physician opinions. Defendant contends that the ALJ provided a detailed and lengthy discussion of the medical evidence and explained the weight given to the physician opinions. Further, Defendant counters that the ALJ properly found that Plaintiff's testimony was not fully credible and substantial evidence supports the finding.

### A.    Medical Opinions

The Court first addresses Plaintiff's argument that the ALJ erred in evaluating the physician opinions. The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a

greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53
F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).

Initially, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject his treating physicians' opinions, however the opinions in this instance are contradicted by the opinions of Dr. Van Kirk and the agency physicians, Dr. Tsoulos and Dr. DeSouza. If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). Therefore, the ALJ need only provide specific and legitimate reasons to reject the opinions of the treating physicians here.

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

Plaintiff argues that the ALJ erred because, although she identified his physicians as treating physicians, she gave no obvious consideration to the regulation providing that treating physician opinions are entitled to more weight than a non-treating source. Plaintiff contends that the ALJ was required to give more weight to his treating doctors' opinions. Defendant responds that the ALJ provided good reasons for the weight provided to each doctors' opinion in concluding that Plaintiff retained the capacity to perform medium work and the regulations do not require the ALJ to discuss all of the factors in detail.

A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). "If there is 'substantial evidence'

in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2). "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." Orn, 495 F.3d at 632. The factors to be considered include the " '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole.' " Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Ghanim, 763 F.3d at 1161 (quoting Orn, 495 F.3d at 631).

Upon review of the ALJ's opinion, the Court finds that the ALJ did consider the factors listed in sections 404.1527 and 416.927 in determining the weight to be provided to the doctor's opinions. (AR 19-24.) However, once the ALJ finds that a treating physician's opinion is not well supported by evidence in the record that opinion is no longer entitled to controlling weight. Orn, 495 F.3d at 631. The issue then is whether the ALJ provided specific and legitimate reasons for rejecting the opinions of the treating physicians that are supported by substantial evidence in the record.

Plaintiff argues that the ALJ erred by discussing the opinions of the treating physicians in isolation from each other without acknowledging that they support each other in their agreement that Plaintiff's ability to perform fulltime work is more limited than the ALJ describes. The Court rejects Plaintiff's contention that the ALJ failed to consider the record as a whole and considered each physician's opinion in isolation. The ALJ can meet her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen , 779 F2d 1403, 1408 (9th Cir. 1989)).

Here, the ALJ set forth a discussion of Plaintiff's treatment, including x-ray and MRI testing, since he received his work related injury and that he was approved to return to work on December 13, 2010, with limitations. (AR 20.) The ALJ further considered the treatment that Plaintiff received the following year and that Dr. Hellner determined he could return to his regular work as per Dr. Nijjar. (AR 20.) The ALJ also considered that Plaintiff was examined by Dr. Van Kirk in 2013 who found that Plaintiff could perform a broad range of work at the medium exertion level.[2] (AR 21.) The ALJ then considered that Plaintiff received conservative treatment form the Gettysburg Medical Clinic and had a lumbar MRI in 2015 that showed mild L5-S1 disc narrowing (AR 21.) The ALJ then went on to consider the statements of the treating, examining, and non-examining physicians in assessing Plaintiff's residual functional capacity. (AR 22.) She then discussed the individual physician opinions and the weight provided to each. (AR 22-24.) Review of the decision demonstrates that the ALJ considered the record as a whole in determining Plaintiff's residual functional capacity.

[2] In a footnote, Plaintiff argues that while Dr. Van Kirk's report states that he reviewed medical records, the review was limited to Plaintiff's allegations of his impairments. However, since Plaintiff has not challenged the weight provided to the opinion of Dr. Van Kirk, the Court does not further address the issue.

Plaintiff also argues that if the ALJ found that Plaintiff improved she should have considered whether there was a 12 month period during which he was limited to light work and when such medical improvement took place. Here, Plaintiff was injured on August 12, 2010. (AR 498.) He was placed on modified duty until October 12, 2010, when Dr. Hawley found that he could return to his usual occupation and had the capacity to lift 50 pounds with unlimited pushing and pulling. (AR 511-512.) On October 19, 2010, he was placed on modified work of no lifting, pushing, or pulling over 20 pounds and no bending. (AR 402.) On this same date, the record notes he was found unable to return to work because he could not bend or stoop for 1 to 3 hours per day. (AR 538.) On November 17, 2011, he was returned to modified duty with the 20 pound restrictions and no bending. (AR 397, 400.) On November 20, 2010, Plaintiff was returned to an alternate job with no restrictions (AR 540), although the 20 pound restrictions remained (AR 395, 475, 531.) On October 18, 2011, Dr. Nijjar found that Plaintiff was able to return to his regular job. (AR 359.) On December 2, 2012, Dr. Honsik found that Plaintiff should have a permanent work restriction of no pushing or pulling greater than 20 pounds and no bending and was able to return to work without restriction. (AR 344.)

Plaintiff alleges a disability onset date of November 20, 2011, and argues that as of this date he would grid out under the Social Security regulations if he was limited to light work. However, the Grids are consulted at step five to determine whether substantial work exists in the national economy that the claimant can perform. Thomas, 278 F.3d at 960. Plaintiff was found able to return to his regular work on October 18, 2011, one month prior to his alleged disability onset date, and returned to work without restrictions on December 2, 2012 by Dr. Honsik. The only opinions after this date which would preclude Plaintiff from performing his past relevant work would be the limitations opined by Dr. Hawley and Dr. Fong's medical source statements. As discussed below, the ALJ provided specific and legitimate reasons to reject Dr. Hawley and Dr. Fong's opinions that are supported by substantial evidence in the record. Here, the ALJ found that Plaintiff was able to perform his past relevant work at step four of the sequential process, therefore, the sequential process stops and Plaintiff is found not to be disabled. Stout, 454 F.3d at 1052. Further, since there is evidence in the record to support the finding that Plaintiff remained capable of performing his past relevant work, the Court finds that the ALJ did not err by failing to consider if there was a one year period following the alleged onset date in which Plaintiff was limited to light work.

The Court considers whether the ALJ provided specific and legitimate reasons to reject physician opinions that are supported by substantial evidence in the record.  Orn, 495 F.3d at 633.

1.    Dr. Hellner's Opinion

Plaintiff alleges that the ALJ erred because she never evaluated Dr. Hellner's opinion that Plaintiff was limited to light exertion work.  Plaintiff contends that it is not clear if she considered or rejected this opinion or simply overlooked it.  Defendant responds that the ALJ set forth a detailed summary of Dr. Hellner's treatment records, objective findings and testing results.  Further, Dr. Hellner returned Plaintiff his regular work and the ALJ did not err by failing to discuss any temporary limitations that were included in the Dr. Hellner's records.

The ALJ noted that Plaintiff began treatment with Dr. Hellner, an orthopedist, on August 24, 2011.  (AR 20, 287.)

> Dr. Hellner noted that the claimant had previously had an extensive work-up; had been on a variety of medications including analgesics, anti-inflammatories, muscle relaxers; and he had physical therapy.  He noted that the claimant's pain was primarily in the low back, right hip, buttock, and right leg with numbness and tingling extending down to the calf.  Physical examination revealed positive straight leg-raising test on the right at 80 degrees, negative on the left, some trace weakness on plantar flexion against resistance, and decreased sensation in the posterior calf.  His MRI revealed disk desiccation and disk bulging at multiple levels though his level of symptoms appeared consistent with an SI involvement.

(AR 20, 287-288.)  Dr. Hellner noted that Plaintiff would return after his EMG nerve conduction study and his work status remained unchanged.  (AR 288.)

The ALJ noted that "[a]n EMG nerve conduction study confirmed peripheral neuropathy of the peroneal nerve, but no evidence of denervation in a radiculopathy-type pattern.  (AR 20, 373-374.)  On September 15, 2011, Plaintiff informed Dr. Hellner that he had fainted during the nerve conduction study and deferred having the rest of the examination completed.  (AR 20, 290.)  Dr. Hellner found trace weakness right foot dorsiflexion, positive straight leg raising on the right at 80 degrees.  (AR 20, 290.)  Plaintiff was asking to have additional testing done, but Dr. Hellner noted that he refused to have the nerve conduction test performed it is entirety and refused to have his paraspinous muscles electrodiagnositically tested for radiculopathy.  (AR 289-290.)  Dr. Hellner found that Plaintiff was approaching a point of maximal medical improvement and recommended that Plaintiff be sent for an AME examination.  (AR 290.)

Plaintiff next saw Dr. Hellner on October 27, 2011.  (AR 291-292.)  Plaintiff had positive straight leg-raising test on the right at 70 degrees, and limited motion in the low back, hip, and buttocks, as well as pain.  (AR 291.)  Dr. Hellner stated that Plaintiff had some degree of neuropathy with mild disc disease, as well as sciatic-type symptoms.  (AR 20, 291.)  Dr. Hellner noted that Plaintiff reported that he received very little benefit from any and all treatment modalities to that point.  (AR 291.)  Dr. Hellner found "moderately significant subjective component but certainly no evidence of need for operative intervention."  (AR 291-292.)  Plaintiff was to continue on 20 pound weight lifting restriction, with no bending, lifting, pushing or pulling greater than 20 pounds.  (AR 292.)

On December 8, 2011, Dr. Hellner saw Plaintiff and found positive straight leg raising on the right at 80 degrees, negative on the left; 20 percent decrease in horizontal torsion and lateral bend and visible spasm in the back.  (AR 297.)  Dr. Hellner continued Plaintiff's medication and noted that orthopedist Mohinder Nijjar M.D. had opined the claimant could return to his regular work with lifting of no more than 2-3 pounds.  (AR 297.)  Plaintiff's work status was "[r]egular work as per Dr. Nijjar."  (AR 20, 298.)

Plaintiff saw Dr. Hellner again on January 19, 2012, who found negative straight leg raising left, positive straight leg raising right at 80 degrees, and slight limits in horizontal torsion and lateral bend.  (AR 295.)  Dr. Hellner noted that Plaintiff remained at a stable level with some slight increased symptoms on the basis of the recent cold weather.  (AR 295.)

On March 1, 2012, Dr. Hellner found positive straight leg raising right at 70 degrees, negative on the left, 4 out of 5 strength right, EHL, and anterior tibialis against resistance.  (AR 20, 293.)  Dr. Hellner noted "patient with documented disk disease and right leg peroneal nerve insufficiency with further evidence now of weakness involving the foot in the distribution consistent with both the level and side of his MRI findings will require physical therapy three times a week for five weeks in view of the increasing weakness in the leg and foot."  (AR 20, 293-294.)

On April 16, 2012, Dr. Hellner found mildly positive leg raising on the right, negative on the left, slight limits in horizontal torsion and lateral bend with no specific sensory or motor

changes. (AR 305.) Dr. Hellner noted Plaintiff "continues to have on-going sciatica and had very little benefit from the physical therapy." (AR 20, 305.)

On May 29, 2012, Dr. Hellner found positive straight leg raising right at 70 degrees, negative on the left, and 20 percent decrease in horizontal torsion and lateral bend. (AR 303.) Plaintiff continued to have similar findings on subsequent appointments, but on July 10, 2012, it is noted that he has fairly good motor strength, negative Holman's sign, and minimal calf swelling. (AR 299.) On October 2, 2012, Dr. Hellner noted burning anterolateral right lower leg, positive straight leg raising right at 70 degrees, minimally positive reverse straight leg raising on the left at 80 degrees, 20 percent decrease in horizontal torsion and lateral bend in the back. (AR 307.)

The ALJ considered the treatment records of Dr. Hellner and that on December 8, 2011, Dr. Hellner noted that Plaintiff had been returned to regular work by Dr. Nijjar. (AR 20.) Based upon review of Dr. Hellner's treatment records, he continued the restrictions that were set forth when Plaintiff was returned to modified work status by Dr. Romero and Dr. Hawley. Because the limitations were opined by Dr. Romero and Dr. Hawley and then continued by Dr. Hellner, the reasons provided by the ALJ in addressing Dr. Hawley's opinion would also apply to the opinion of Dr. Hellner. To the extent the the ALJ failed to discuss this opinion in regard to Dr. Hellner it would be harmless error as the limitations were addressed by the ALJ in discussing the opinion of Dr. Hawley. Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)

The ALJ considered the treatment notes of Dr. Hellner and while Plaintiff argues that Dr. Hellner opined that Plaintiff was restricted to light work, Dr. Hellner's December 8, 2011 note states that Plaintiff was returned to regular work. The Court finds that the ALJ did not err by not specifically addressing the October 27, 2011 opinion, since Dr. Hellner opined that Plaintiff was able to return to his regular work as a poultry hanger on December 8, 2011, and the ALJ discussed the limitations in addressing Dr. Hawley's opinion as addressed below.

2.    Dr. Hawley's Opinion

Plaintiff argues that the ALJ erred in giving little weight to Dr. Hawley 's opinion because she failed to acknowledge that Plaintiff saw the doctors in the medical practice seven times

between October 2010 and December 2011 and each time he was would to be limited to lifting no more than 20 pounds with no bending. Additionally, Plaintiff contends that the consultative examiner did not review any of his treatment notes from 2010 through 2011. Defendant responds that Dr. Hawley provided wildly inconsistent opinions regarding Plaintiff's functional abilities that were unsupported by the medical record.

The ALJ considered that on October 12 2010, Plaintiff's treating physician, Dr. Hawley, completed a permanent and stationary report and indicated that Plaintiff could lift and carry 50 or more pounds; could frequently climb, balance, stoop, kneel, crouch, crawl, twist, reach, handle, finger, feel, see, hear, and speak; and he could return to his usual occupation. (AR 20, 408, 511-512.) But then on October 19 2010, Dr. Hawley opined the claimant should have work restrictions of no lifting pushing or pulling greater than 20 pounds and no bending. (AR 20, 402, 405, 408.) On December 13 2010, Plaintiff was approved to return to work with the restrictions of no lifting pushing or pulling more than 20 pounds and no bending at the waist. (AR 20, 393, 475, 531.)

The ALJ noted that on October 19, 2010, Dr. Hawley opined that Plaintiff should have work restrictions of no lifting pushing or pulling greater than 20 pounds and no bending. (AR 23, 402-408.) This opinion was given little weight and the ALJ pointed to Plaintiff's physical examination by Dr. Van Kirk after the alleged onset date of disability which only showed a slight reduction in lumbar range of motion. (AR 20, 453.) Dr. Van Kirk found that Plaintiff had a normal gait and was able to bend forward to within 4 inches of touching the floor with his long fingers. (AR 452.) A straight leg-raising test was negative in the supine and seated positions. (AR 453.) His motor strength was 5/5 in all extremities including handgrip. (AR 453.) His handgrip was 40, 50, 45 pounds on the right; and 50, 50, 45 pounds on the left. (AR 453.) A sensory examination was normal in all cervical and lumbar dermatomes. (AR 453.) The ALJ found that this was consistent with the Plaintiff's ability to perform a broad range of work at the medium level of exertion. (AR 23.)

Plaintiff argues that the fact that the opinions of the worker's compensation physicians were proffered prior to the alleged onset date is highly relevant because it demonstrates that

Plaintiff was limited to light work as of his 55th birthday. However, as the ALJ noted, the medical evidence after the allege onset date demonstrates that Plaintiff was more functional than the limitations opined by Dr. Hawley prior to the alleged onset date. (AR 454-455.) Therefore, the ALJ provided a specific and legitimate reason to reject the opinion of Dr. Hawley that is supported by substantial evidence in the record.

### 3. Dr. Nijjar's Opinion

Plaintiff argues that the ALJ erred by giving little weight to the opinion of Dr. Nijjar because his opinion unequivocally set forth an assessment of Plaintiff's functional ability. Defendant counters that Dr. Nijjar did not opine as to Plaintiff's functional ability, but found that Plaintiff was not a Qualified Injured Worker. Defendant contends that Dr. Nijjar merely opined that Plaintiff's capacity to work exceeded the demands of his regular work as poultry hanger in contrast to a residual functional capacity which is the most the claimant can do despite his limitations.

"Workers' compensation disability ratings are not controlling in disability cases decided under the Social Security Act, and the terms of art used in the California workers' compensation guidelines are not equivalent to Social Security disability terminology. Booth v. Barnhart, 181 F.Supp.2d 1099, 1104 (C.D. Cal. 2002). Nevertheless, the ALJ should evaluate the objective medical findings of the workers' compensation doctors by the same standards as are used to evaluate medical evidence under the Social Security regulations. Booth, 181 F.Supp.2d at 1104. "The ALJ must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." Id. at 1099.

The ALJ considered that on October 18 2011, agreed medical examiner orthopedist Dr. Nijjar opined that Plaintiff could return to his regular work based upon the assumption that Plaintiff's regular work required standing, only slight bending, and lifting of no more than 2-3 pounds at a time. (AR 23, 347-359.) The ALJ gave this opinion little weight because it was not an opinion of Plaintiff's residual functional capacity to perform work but rather was an opinion of whether Plaintiff was a qualified injured worker which was unrelated to the determination of

disability under Social Security Act.  (AR 23.)

Dr. Nijjar examined Plaintiff and found no deformity in the cervical spine, no paraspinal muscle spasm or localized tenderness.  (AR 355.)  Plaintiff had full range of motion in the cervical spine.  (AR 355.)  Plaintiff had no tenderness or deformity in the thoracic spine and no paraspinal muscle spasm was noted.  (AR 355.)  Range of motion in the dorsal spine: flexion, and extension left and right lateral rotation was within normal limits.  (AR 355.)  Plaintiff had slight straightening of the lumbar curvature and minimal paraspinal muscle spasm more so to the right side than the left side of the lumbosacral spine.  (AR 355.)  There were no visible or palpable masses in the lumbar spine and no scars are present.  (AR 355.)  There was no tenderness in the sciatic notch sacrospinous ligaments or sacroiliac joints.  (AR 355.)  Range of motion in the lumbosacral spine according to the AMA Guides using double inclinometers with three attempts: Flexion 60 degrees, Extension 20 degrees, Left lateral flexion 20 degrees, Right lateral flexion 20 degrees.  (AR 355.)  Hip flexion angle was 48 degrees.  (AR 355.)  Straight leg raising bilaterally was 70 degrees with a negative Lasegue's test and Plaintiff ambulated without a limp.  (AR 356.)

Dr. Nijjar found that Plaintiff's lumbar impairment range was 5 to 8 percent, and 6 percent impairment of the whole person was appropriate.  (AR 357.)  If an alternate method was used then Plaintiff's impairment would be 10 percent of the whole person with total impairment of range of motion to be 14 percent of the whole person.  (AR 357-358.)  Plaintiff's impairment was apportioned 50 percent to his work related injury and 50 percent to preexisting causes.  (AR 358.)  Dr. Nijjar opined that Plaintiff "can return to his regular work as his job entails standing, slight bending, and lifting no more than 2-3 pounds at a time so I think he can return to his regular work and is not a Qualified Injured Worker."  (AR 359.)

Plaintiff argues that Dr. Nijjar found that Plaintiff could only lift 2 to 3 pounds at a time. However, Dr. Nijjar did not opine as to Plaintiff's functional capacity, but only that he retained the capacity to perform what Dr. Nijjar understood to be the requirements of his job.  Therefore, the ALJ properly gave little weight to the opinion because it was not indicative of Plaintiff's residual functional capacity.  The ALJ provided a specific and legitimate reason to reject the opinion of Dr. Nijjar.

4. Dr. Fong's Opinion

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Dr. Fong because it is speculation that Plaintiff only received conservative treatment and there is no reason to assume that Dr. Fong's opinion that Plaintiff will miss four days of work per month is due to any condition other than Plaintiff's back pain. Finally, Plaintiff contends that the ALJ failed to consider that he saw Dr. Fong six times and no physician reviewed Dr. Fong's treatment notes. Defendant responds that the ALJ properly found that Dr. Fong provided an overly restrictive opinion that is unsupported by the medical evidence and properly gave it little weight based on the conservative treatment received by Plaintiff and because there was no explanation for why Plaintiff would miss work four days per month.

The ALJ found that Plaintiff received treatment from the Gettysburg Medical Clinic, but there were very few objective findings to support his allegations. (AR 21.) On January 16, 2015, treating physician Johnny Fong M.D. opined that Plaintiff had physical restrictions that would preclude sedentary work on a full-time basis. (AR 22, 549-550.) Dr. Fong opined that in an eight-hour day the claimant could sit less than two hours and could stand or walk less than two hours. (AR 22-23, 549.) He could not lift or carry any weight. (AR 23, 549.) Plaintiff would be off task 25 percent or more of the workday. (AR 23, 549.) He would be absent for four or more days per month. (AR 23, 549.) In response to the question, "Are your patient's impairments (physical impairments plus any emotional impairments) as demonstrated by signs clinical findings and laboratory or test results reasonably consistent with the symptoms and functional limitations described above in this evaluation?" Dr. Fong responded no. (AR 550.) Dr. Fong stated that old records were needed for review or further evaluation was needed. (AR 550.)

On August 13, 2015, Dr. Fong opined the claimant had physical restrictions that would preclude sedentary work on a full-time basis. (AR 23.) Dr. Fong opined that in an eight-hour day the claimant could sit less than two hours and could stand or walk less than two hours. (AR 23, 551.) Plaintiff could rarely lift or carry less than ten pounds. (AR 23, 551.) He would be off task 25 percent or more of the workday and was incapable of even low stress work. (AR 23, 552.)

Dr. Fong also opined that Plaintiff had some mild mental limitations category II that

would preclude perform performance for 5 percent of an 8-hour work day in the areas of carrying-out very short and simple instructions sustaining an ordinary routine without special supervision, making simple work-related decisions, asking simple questions or requesting assistance getting along with coworkers without unduly distracting them, or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness.  (AR 23, 553-554.)  Plaintiff would be absent for four or more days per month.  (AR 554.)  This opinion was given little weight because Plaintiff did not receive mental health treatment and there was no evidence that Plaintiff had a medically determinable mental impairment.  (AR 23.)  The ALJ gave little weight to both opinions because Plaintiff received conservative treatment for his impairments and there was no explanation for the opinion that the claimant would be absent from work.  (AR 23.)

Plaintiff argues that it is speculation that Plaintiff only received conservative treatment for his back impairment.  After his work related injury Plaintiff was treated with mediations and was referred to physical therapy.  (AR 287, 434.)  On August 13, 2010, Plaintiff received a spinal injection.  (AR 440.)  After the alleged onset date, Plaintiff was treated with medications and was referred to physical therapy.  (AR 293-294, 297-298, 299, 301, 303, 305, 307.)

While Plaintiff argues that there is no recommendation for other treatment, the record consistently indicates that Plaintiff could benefit from spinal injections, but he was not interested.  (AR 290, 291-292, 344, 382, 464.)  Dr. Fong reported that he was treating Plaintiff with oral anti-inflammatories and muscle relaxants.  (AR 549.)  The ALJ reasonably found that treatment Plaintiff was receiving for his back impairment was not consistent with the degree of limitations imposed by Dr. Fong.

Further, the ALJ noted that the objective findings did not support the limitations.  Dr. Fong's treatment notes only record positive muscle tenderness on March 30, 2015, (AR 558), with no other objective findings to support the limitations.  (AR 555, 556, 557, 558, 559, 560.)  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

The ALJ also gave little weight to Dr. Fong's opinion that Plaintiff would miss four days

per month because Plaintiff did not receive mental health treatment and there was no evidence that Plaintiff had a medically determinable mental impairment. (AR 23.) While Plaintiff argues that there is no reason to assume this limitation was imposed for any reason other than back pain, the ALJ made a reasonable interpretation based upon the form filled out by Dr. Fong.

Dr. Fong completed a physical source statement and left the question regarding the number of days that Plaintiff would miss work due to his physical impairments and treatment blank. (AR 552.) In response to the same question on the mental medical source statement, Dr. Fong stated that Plaintiff would miss more than four days per month due to his impairments or treatment. (AR 554.) It was therefore a reasonable interpretation of the evidence that Dr. Fong found Plaintiff would miss work due to mental impairments and not physical impairments. As the ALJ pointed out, Plaintiff has not received any mental health treatment and there is no evidence that he has a medically determinable mental impairment. Other than a single notation of depression in Dr. Fong's treatment notes (AR 557), the record consistently supports that Plaintiff's recent and remote memory are intact and his mood and affect were at the most concerned (AR 343, 381, 385, 390, 398, 403, 407, 417, 425, 440, 445, 449, 464, 473). The ALJ's interpretation of the evidence was rational.

The ALJ provided specific and legitimate reasons to reject the opinion of Dr. Fong that are supported by substantial evidence in the record.

### B.    Duty to Develop the Record

Plaintiff argues that if the ALJ could have contacted Dr. Fong for clarification, requested an undated consultative examination, or sent the file back for further review and development of the record. Defendant counters that Plaintiff is merely demonstrating a disagreement with the ALJ's resolution of the evidence.

When applying for disability benefits, the claimant has the duty to prove that he is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or

the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence.  Mayes
v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150
(9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is not required to
trigger the necessity to further develop the record where the record itself establishes the ambiguity
or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

While Plaintiff suggests that the ALJ could have taken steps to further develop the record,
the facts in this case are not similar to other instances in which the ALJ was found to have a duty
to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on
testimony of physician who indicated more information was needed to make diagnosis); McLeod,
640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's
Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred
where failed to determine if claimant's benefits were property terminated or should have been
resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D.
Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician
who recognized he did not have sufficient information to make a diagnosis).

Here, there was no indication that the record was inadequate to make a disability
determination regarding Plaintiff.  The medical reports did not indicate that more information was
necessary and the physicians specifically made findings and opined regarding Plaintiff's
limitations, work abilities, and diagnosis.  While the ALJ found that Dr. Fong's opinion was not
supported by the medical evidence, this does not require the ALJ to contact him for further
information.  The ALJ did not err by failing to further develop the record.

### C. Residual Functional Capacity

Plaintiff argues that the ALJ erred by finding that he is capable of performing medium
work and that he should be limited to light work.  Defendant points to the opinions of Dr. Van
Kirk, Dr. Tsoulos, and Dr. DeSouza who all opined that Plaintiff is capable of medium work.

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20
C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the]
case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  "The ALJ must consider a claimant's

physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

Here, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) including lifting up to 50 pounds occasionally and 25 pounds frequently; standing or walking for six to eight hours and sitting for six to eight hours in an 8-hour workday with the following restrictions, he can frequently climb, stoop, kneel, crouch, and crawl. (AR 18.) In making this determination, the ALJ gave substantial weight to the opinion of Dr. Van Kirk, and significant weight to the opinions of agency physicians N. Tsoulos and L. DeSouza. (AR 22, 24.) As already discussed, the ALJ provided specific and legitimate reasons to reject the opinion of Plaintiff's treating providers.

Dr. Van Kirk conducted an orthopedic consultation of Plaintiff on June 25, 2013. (AR 449-455.) After conducting a physical examination, Dr. Van Kirk opined that Plaintiff could lift and/or carry, including upward pulling, 50 pounds occasionally and 25 pounds frequently. (AR 454.) Plaintiff had no limitations in pushing and/or pulling including operation of hand and/or foot controls other than for lift/carry. (AR 454.) Plaintiff could stand and/or walk with normal breaks for up to 6 hours in a normal 8-hour workday. (AR 454.) Plaintiff did not require a hand-held assistive device for ambulation. (AR 454.) Plaintiff was able to sit with normal breaks without restriction. (AR 454.) Outside of the normal break periods Plaintiff did not need to periodically alternate sitting and standing to relieve pain/discomfort. (AR 454.) Plaintiff could frequently climb ramps, stairs, ladders, ropes, and scaffolds; and could frequently balance, stoop, kneel, crouch, and crawl. (AR 454.) Plaintiff could reach without limitations in all directions including overhead. (AR 454.) Plaintiff had no limitations with gross manipulation handling or fine manipulation fingering. (AR 455.) There were no limitations in vision, hearing, or speaking

appreciated.  (AR 455.)  Plaintiff had no environmental limitations except to avoid all exposure to extreme cold and wetness because his symptoms are enhanced in cold weather so Plaintiff should not be required to work in extremely cold and/or damp environments.  (AR 455.)

As Dr. Van Kirk based his opinion upon the independent clinical findings that he made during his examination of Plaintiff, his opinion is substantial evidence to support the ALJ's opinion.  Andrews, 53 F.3d at 1041.  The ALJ found that Dr. Van Kirk's opinion was consistent with the medical record and the examination findings which showed that Plaintiff walked with a normal gait, could bend forward to within four inches of touching the floor with his long fingers, had only slight limitation of motion and negative straight leg testing with 5/5 motor strength in all extremities.  (AR 22, 451-453.)  The ALJ found that Dr. Van Kirk's findings were consistent with Plaintiff's ability to perform a broad range of work at the medium exertion level.  (AR 22.)

On July 1, 2013, Dr. Tsoulos completed a residual functional capacity assessment for Plaintiff.  (AR 60-62, 70-72.)  Dr. Tsoulos opined that Plaintiff could occasionally lift 50 pounds and frequently lift twenty five pounds; stand and or walk 6 hours in an 8 hour workday and sit 6 hours in an 8 hour workday with normal breaks.  (AR 61, 71.)  Plaintiff's ability to push and pull was unlimited other than push and carry.  (AR 61, 71.)  Plaintiff could frequently climb ramps, stairs, ladders, ropes, and scaffolds; and could frequently balance, stoop, kneel, crouch, and crawl. (AR 61-62, 71-72.)  Plaintiff had no other limitations.  (AR 62, 72.)

On January 13, 2014, Dr. De Souza completed a residual functional capacity assessment on reconsideration.  (AR 85-87, 98-100.)  Dr. De Souza made identical findings.  (AR 86-87, 98-100.)

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, the opinions of Dr. Tsoulos and Dr. De Souza are consistent with the opinion of Dr. Van Kirk.  Therefore, the opinions of Dr. Van Kirk, Dr. Tsoulos, and Dr. De Souza are substantial evidence to support the residual functional capacity assessment determination.  Substantial evidence supports the residual

1 functional capacity assessment determination.

2     **D.    Plaintiff's Credibility**

3     Plaintiff argues that above arguments are also attacks on the ALJ's credibility finding and

4 contends that the ALJ erred by failing to consider Plaintiff's consistent work history. Defendant

5 responds that the ALJ appropriately found that Plaintiff's symptom testimony was not fully

6 supported by the record as he received conservative treatment for his impairments and the

7 objective medical evidence did not support the alleged symptoms.

8     "An ALJ is not required to believe every allegation of disabling pain or other non-

9 exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted).

10 Determining whether a claimant's testimony regarding subjective pain or symptoms is credible

11 requires the ALJ to engage in a two-step analysis. Molina, 674 F.3d at 1112. The ALJ must first

12 determine if "the claimant has presented objective medical evidence of an underlying impairment

13 which could reasonably be expected to produce the pain or other symptoms alleged."

14 Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations

15 omitted). This does not require the claimant to show that his impairment could be expected to

16 cause the severity of the symptoms that are alleged, but only that it reasonably could have caused

17 some degree of symptoms. Smolen, 80 F.3d at 1282.

18     Then "the ALJ may reject the claimant's testimony about the severity of those symptoms

19 only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin,

20 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support

21 this conclusion and the findings must be sufficiently specific to allow a reviewing court to

22 conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily

23 discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)

24 (internal punctuation and citations omitted). Factors that may be considered in assessing a

25 claimant's subjective pain and symptom testimony include the claimant's daily activities; the

26 location, duration, intensity and frequency of the pain or symptoms; factors that cause or

27 aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

28 measures or treatment used for relief; functional restrictions; and other relevant factors.

Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity persistence and limiting effects of these symptoms were not entirely credible for the reasons explained in the decision. (AR 19.)

Although Plaintiff alleges that the ALJ did not consider his work history, the ALJ specifically stated that she did consider his work history in making the credibility determination. (AR 22.) She further found that the objective medical evidence and conservative treatment received suggest that Plaintiff's symptoms are not as severe as he alleges. (AR 22.)

1. Conservative Treatment

The ALJ found that Plaintiff's allegations that he could not sustain the physical demands of competitive employment were less than fully credible because, since the amended onset date, Plaintiff has only received conservative treatment for his lumbar degenerative disc disease, obesity, and lumbar strain/sprain. (AR 20.) Review of the record demonstrates that since the amended onset date, Plaintiff has been treated with medication, and most recently with muscle relaxers and anti-inflammatories. (AR 292, 294, 295, 297-298, 299, 301, 303, 305, 307, 549, 551.)

Plaintiff argues that no physician ever opined that additional treatment was necessary. However, there are notations in the record that Plaintiff could benefit from epidural steroid or facet injections, but that he was not interested. (AR 344.) Additionally, Plaintiff was recommended to attend five weeks of physical therapy on March 1, 2012 due to weakness in his

foot and leg.[3]  (AR 293-294.)  Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).  The conservative treatment received by Plaintiff is a clear and convincing reason to reject his symptom testimony.

2.  Objective Medical Evidence

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ found that the objective evidence did not support the alleged severity of the symptoms and the degree of limitation alleged by Plaintiff.  (AR 22.)  While Plaintiff continued to have findings of positive straight leg raise testing and some limitation in torsion and lateral bend (AR 293, 295, 297, 299, 301, 303, 305, 307, 343), these findings are similar to the objective findings prior to and at the time that Plaintiff was returned to his regular work status (AR 287, 290, 292, 355-356).  Despite these findings, Dr. Nijjar and Dr. Hellner determined that Plaintiff's symptoms would not preclude him from performing his regular work.

The ALJ also found that the course of medical treatment did not bolster Plaintiff's credibility with respect to the degree of pain and other subjective complaints.  (AR 22.)  After Plaintiff was seen on October 2, 2012, there is no evidence of Plaintiff receiving any treatment for his alleged impairments until he was seen by Dr. Fong in December of 2014.  (AR 560.)  Dr. Fong's records only contain a finding of muscle tenderness on March 30, 2015.  (AR 558.)  Then

---

[3] The Court notes that there is a note on April 16, 2012 that Plaintiff received little benefit from physical therapy. (AR 305.)  It is unclear if this refers to a current course of physical therapy or the physical therapy he received in 2010 which Plaintiff stated was not beneficial.  (See AR 291 (patient has had no benefit from any and all treatment modalities to this point.)  The record itself only contains a record for a physical therapy initial examination on August 18, 2010.  (AR 434-435.)

on August 6, 2015, Plaintiff had an x-ray of the lumbar spine that showed only mild L5-S1 intervertebral disc narrowing.  (AR 561.)

During this time period from October 2, 2012 through December 2014, Plaintiff had a consultative examination by Dr. Van Kirk on June 25, 2013, who noted that there was no visible atrophy of any measured muscle groups and Plaintiff was able to visually move around the office without assistance.  (AR 451.)  He was able to get on and off the examination table without assistance, and walk around the examination room without difficult and had no limp.  (AR 452.) Plaintiff was able to get on his heels and toes and could squat down and take a few steps without difficulty.  (AR 452.)  There was no swelling and normal range of motion of the upper and lower extremities.  (AR 452.)  On examination of the lumbar spine, Dr. Van Kirk found no evidence of increased muscle tone or spasm.  (AR 452.)  There was no evidence of a significant kyphosis lordosis or noticeable scoliosis.  (AR 452.)  Plaintiff's main pain was in the mid lumbar spine area and it radiated into the waist area posteriorly and into the sacroiliac joint and buttock on the right side.  (AR 452.)  Plaintiff was able to bend forward to within 4 inches of touching the floor with his long fingers.  (AR 452.)  Plaintiff had negative straight leg test bilaterally.  (AR 453.) Plaintiff had essentially normal muscle strength in all major muscle groups of the upper and lower extremities at 5/5.  (AR 453.)  Dr. Van Kirk found that Plaintiff had the physical capacity to perform medium work but should avoid exposure to extreme cold or wetness as this would enhance his symptoms.  (AR 455.)

The ALJ properly concluded that the medical record did not support Plaintiff's allegations of disabling pain and symptoms and provided a clear and convincing reason for the adverse credibility finding.

### V.

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the opinions of Plaintiff's treating physicians or in finding Plaintiff's symptom testimony to be less than credible.

///

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jaime L. Sandoval. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 13, 2018**

_____
UNITED STATES MAGISTRATE JUDGE